AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

FILED
Oct 10 2023
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

United States of America
v.
SAGIREDDY PULLA REDDY,

Defendant(s)

Case No. 3-23-mj-71520 MAG

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  approx. 11/2011 - 12/2019  in the county of  Santa Clara  in the
Northern District of  California , the defendant(s) violated:

| Code Section | Offense Description |
| --- | --- |
| 18 U.S.C. § 1349 | Conspiracy to Commit Wire Fraud / Honest Services Fraud |

This criminal complaint is based on these facts:
See attached affidavit of FBI Special Agent Francesca Cheli.

☑ Continued on the attached sheet.

/s
Complainant's signature

Francesca Cheli, FBI Special Agent
Printed name and title

Approved as to form  /s
AUSA  Sailaja M. Paidipaty

Sworn to before me by telephone.

Date: 10/07/2023

City and state:  San Francisco, California

Hon. Lisa J. Cisneros, U.S. Magistrate Judge
Printed name and title

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A CRIMINAL COMPLAINT

I, Francesca Cheli, Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, hereby declare as follows:

## OVERVIEW

1. I make this affidavit in support of a criminal complaint charging Sagireddy Pulla Reddy, a/k/a S. Pullareddy Sagireddy aka Pullareddy Sagireddy ("REDDY") with Conspiracy to Commit Wire Fraud and Honest Services Fraud, in violation of 18 U.S.C. § 1349. The charge stems from a kickback scheme orchestrated by REDDY, Kevin Chao ("Chao"[1]), Richard Sze ("Sze"[2]) and Suryanarayana Murthy Bobba ("Bobba"[3]). Based on information learned through

---

[1] Kevin Chao and Richard Sze were arrested in October 2021. At that time, Chao and Sze were charged, respectively, by Complaint with the following offenses: Wire Fraud in violation of 18 U.S.C. § 1343; Honest Services Wire Fraud in violation of 18 U.S.C. § 1346; Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349; and Concealment Money Laundering in violation of 18 U.S.C. § 1956. *See* 21-cr-71679 MAG; 21-cr-71680 MAG.

On July 20, 2023, Chao was charged by Information with one count of wire fraud, in violation of 18 U.S.C. § 1343. He is currently scheduled for a change of plea hearing on October 17, 2023, before the Honorable Beth L. Freeman, U.S. District Judge.

[2] After initially being charged by Complaint, on April 24, 2023, Sze was charged by Information with one count of conspiracy to commit wire fraud and honest services fraud, in violation of 18 U.S.C. § 371. *See United States of America v. Richard Sze,* CR-23-00118-BLF.

Sze entered a guilty plea on October 3, 2023. Sze's plea is pursuant to a cooperation plea agreement entered into with the U.S. Attorney's Office for the Northern District of California. I have personally participated in several interviews of Sze who has admitted to his part in this scheme. Under the plea agreement, if Sze provides substantial assistance to the government, the Court may consider this in determining the appropriate sentence. Based on my participation in this investigation and on corroborating documents, including the financial records relating to the various entities described herein, to the best of my knowledge I believe that information provided by Sze to the FBI is truthful and reliable.

[3] On April 24, 2023, Bobba was charged by Information with one count of conspiracy to commit wire fraud and honest services fraud, in violation of 18 U.S.C. § 371. *See United States of America v. Suryanarayana Murthy Bobba,* CR23-00119-BLF. He is currently scheduled for a change of plea hearing on December 19, 2023.

I have personally participated in several interviews with Bobba who has admitted to his part in this scheme in an effort. Bobba has yet to enter his plea, but similar to Sze, I believe that if Bobba provides substantial assistance to the government, the Court may consider that in

AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

this investigation, I believe that between approximately 2011-2019, while employed by "Company-1," a company with a large office in San Jose, California, Chao, Sze, and Bobba caused Company-1 to award lucrative outsourcing contracts to an Indian company owned by REDDY, who in turn paid kickbacks to his co-conspirators.

2.      The statements contained in this affidavit are based upon my personal observations, my training and experience, information from records and databases, and information obtained from other agents and witnesses. This affidavit does not set forth all my knowledge about this matter; it is intended to only show that there is sufficient probable cause for the requested warrants.

## AFFIANT BACKGROUND

3.      I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law.

4.      I am a Special Agent with the FBI and have been since May 2019.  I am currently assigned to the San Francisco Division of the FBI, where I investigate white collar crimes.  I completed the five-month FBI Special Agent Basic Training program at the FBI Academy in Quantico, Virginia.  During the course of my employment with the FBI, I have investigated and assisted in the investigation of criminal violations relating to complex financial crimes including corporate fraud, money laundering, wire fraud, securities fraud, and other complex financial crimes.  During these investigations, I have participated in and used the following investigative tools: conducting physical surveillance, conducting interviews, executing and writing arrest warrants, search warrants, and seizure warrants, analyzing financial records, and collecting and

---

determining the appropriate sentence.  Based on my participation in this investigation and on corroborating documents, including the financial records relating to the various entities described herein, to the best of my knowledge I believe that information provided by Bobba to the FBI is truthful and reliable.

processing evidence. During these investigations, I have participated in and utilized investigative techniques, including the following methods: conducted physical surveillance, conducted interviews, executed arrest/search/seizure warrants, analyzed financial records, and collected and processed evidence.

## APPLICABLE LAW

### *Criminal Statute*

5. Wire Fraud: Title 18, United States Code, Section 1343 reads, in pertinent part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

6. Honest Services Wire Fraud: Title 18, United States Code, Section 1346 reads, in pertinent part: "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."

7. Conspiracy to Commit Wire Fraud: Title 18, United States Code, Section 1349 reads, in pertinent part: "Any person who attempts or conspires to commit any offense under [Chapter 63 of Title 18 of the United States Code] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

## RELEVANT INDIVIDUALS AND ENTITIES

8. At all times relevant to this complaint:

a) According to their 2023 Notice of Annual Meeting and Proxy Statement, a company that will hereafter be referred to as "Company-1", was a "global leader in industrial automation and digital transformation" which included "hardware and software productions, solutions, and services." Company-1's principal

3

executive office was located in Milwaukee, Wisconsin. Company-1 has a large office in San Jose, California, where Chao, Sze, and Bobba worked during the relevant period.

b) Chao was an individual living in Mountain View, California. Chao and was an employee at Company-1. While at Company-1, Chao held the title of Global Business Director and had the authority to enter into contracts with third parties on behalf of Company-1.

c) Sze was an individual living in Saratoga, California. Sze was an employee at Company-1. While at Company-1, Sze held the title of Manager of Software Engineering and reported directly to Chao.

d) Bobba was an individual living in Los Altos, California. Bobba worked for Company-1 between 2008 and 2013 and then again from 2013 to 2019. Bobba knew REDDY from college and introduced him to Chao and Sze.

e) REDDY was a citizen of India affiliated with and in control of SP SOFTWARE LLC and SPSOFT GLOBAL.

f) MOOTEEC, LLC ("Mooteec"), was a limited liability company headquartered in the State of California, described in California Secretary of State Filings as a "software services" company. In reality, based on information provided by Sze, MOOTEEC served as a "shell corporation" controlled by Chao and Sze that was used to funnel payments related to the conspiracy.

g) ZILLSOFT LLC ("Zillsoft") provided software engineering services to Company-1 beginning in approximately 2010. Based on information provided by Sze and Bobba, I believe that the company was controlled by Chao, Sze, and Bobba. As described further below, Sze and Bobba reported that Zillsoft was sold to REDDY in 2011 as part of the conspiracy in order to conceal the co-conspirators conduct from Company-1.

h) According to its website, SP SOFTWARE LLC ("SPSoft USA") was the United

4

        States based location of SPSOFT GLOBAL ("SPSoft India"), a software services company headquartered in India. REDDY is listed as the manager/member of the entity on a Statement of Information filed with the California Secretary of State on February 9, 2022. Bobba stated that he, with Chao and Sze's agreement, engineered the sale of Zillsoft to SPSoft USA in approximately 2011.

i) According to Sze, SPSOFT CHINA was an entity created by Chao and Sze. The entity was based in China and run by an individual with whom Chao and Sze had previously worked. According to Sze, in order to conceal his and Chao's connection to SPSoft China from Company-1, they entered into an agreement with REDDY whereby REDDY would bill work done by contractors at SPSoft China through SPSoft USA. In exchange, REDDY was paid a fee amounting to three percent of the net amount billed to Company-1 by the SPSoft Entities. Sze stated that in addition, he and Chao continued to cause Company-1 to award consulting contracts to REDDY.

j) Wells Fargo Bank and Citi Bank were financial institutions as defined in Title 18, United States Code, Section 1956(c)(6), and Title 31, United States Code, Section 5312. According to the Federal Deposit Insurance Corporation's ("FDIC") BankFind Suite database, Wells Fargo and Citi Bank are insured by the FDIC.

    i. Citi Bank is headquartered in New York, New York.

    ii. Wells Fargo is headquartered in San Francisco, California.

## FACTS SUPPORTING PROBABLE CAUSE

*Overview*

9. As further described below, REDDY conspired with Chao, Sze, Bobba and other known and unknown co-conspirators, to defraud Company-1 by lying about or failing to disclose material information regarding the relationships between employees of Company-1, REDDY, and the SPSoft Entities (SPSoft USA, SPSoft India, and SPSoft China, collectively). While the

entities used to execute the scheme changed over time, at its core, the employees of Company-1 (Chao, Sze, and Bobba) ensured that certain outsourcing contracts were awarded to REDDY and the SPSoft Entities.  In return, REDDY received a percentage of the contract fees and paid a portion of the fees back to Chao, Sze, and Bobba.  Throughout this time period, from approximately 2011-2019, none of the co-conspirators disclosed this financial arrangement to Company-1 and took steps to create the appearance of an arms-length relationship between Company-1 and its employees and the SPSoft Entities.

### *Zillsoft: Conspiracy Prior to REDDY'S Participation*

10. In 2010, Chao, Sze, and Bobba were all employed by Company-1. They knew that they had a duty of loyalty to Company-1, which required them to disclose their involvement in any outside business, employment, or conflicts of interest.  They received training from Company-1 outlining their duty of loyalty and were required to complete paperwork acknowledging that they understood Company-1's policies and that they would remain in compliance with them.

11. According to Sze and Bobba, in approximately mid-2010, Chao, Sze, and Bobba discussed starting a software engineering consulting company that could provide services as an external vendor to Company-1. Chao, Sze, and Bobba knew, however, that this would violate their duties to Company-1.  Instead of forming a new entity, Chao, Sze, and Bobba acquired control of Zillsoft, an existing California company, which at the time was a corporate shell owned by one of Bobba's family members. According to Sze and Bobba, they and Chao kept the prior owner of Zillsoft[4] on public paperwork to conceal their affiliation with the company.

12. Zillsoft entered into a vendor contract with Company-1 to provide software consulting and development services. Unbeknownst to Company-1, Chao, Sze, and Bobba controlled Zillsoft.  Based on interviews with them, I understand that Bobba and Sze hired

---

[4] Later, Zillsoft, Inc. was changed to Zillsoft, LLC via filings with the California Secretary of State.

software engineers for Zillsoft and reviewed the work product that the engineers conducted on behalf of Company-1. Based on these interviews, I further understand that through his position at Company-1, Chao approved or obtained approval to pay Zillsoft after Company-1 received Zillsoft's invoices. According to Sze and Bobba, Zillsoft's profits from the work performed for Company-1 were split with 40 percent going to Chao, 30 percent going to Sze, and 30 percent going to Bobba. These profits were directed first from Zillsoft's bank account into a bank account controlled by Bobba, and then a portion of the profits were funneled to a bank account controlled by Chao and Sze.

13. Despite knowing of the duty of loyalty that they owed to Company-1, at no time did Chao, Sze, or Bobba disclose their control of or financial relationship with Zillsoft to Company-1, nor did they disclose that they were obtaining money from Company-1 through materially false and misleading statements made regarding Zillsoft.

### *SPSoft USA/SPSoft India: REDDY Joins the Conspiracy*

14. According to Bobba, towards the end of 2011, Bobba introduced Chao and Sze to REDDY. Bobba knew REDDY from college. Bobba reportedly told REDDY that by buying Zillsoft, REDDY would get Company-1 as a client. At the time, REDDY controlled SPSoft India. According to Sze and Bobba, REDDY paid a lump sum of approximately $10,000 for the purchase and inherited Zillsoft's vendor contracts with Company-1. REDDY agreed to pay Chao, Bobba, and Sze a percentage of net receipts paid by Company-1 in exchange for Chao, Sze, and Bobba directing Company-1's software projects to SPSoft India.

15. To facilitate the arrangement, REDDY incorporated a United States based entity, SP SOFTWARE LLC[5] ("SPSoft USA") and billed Company-1 through this entity, though the at least a portion of the services were performed through engineers in India who I believe worked for SPSoft India. Based on my review of financial records, on or about November 22, 2011, a

---

[5] On November 15, 2011, an Articles of Incorporation was filed with the California Secretary of State for SP Software LLC.

CitiBusiness Account Application for a CitiBank account ending in 2107 in the name of SP SOFTWARE, LLC with an EID of 45-3844885 was signed with REDDY'S name and personal identifying information. The application noted that, SP SOFTWARE LLC performed "software development and consulting." REDDY was the only authorized user for the account. Company-1 was listed as one of the two major customers of SP SOFTWARE LLC.

16.    Approximately 20 percent of the overall amount paid by Company-1 to SPSoft USA was funneled to bank accounts that Chao, Sze, and Bobba controlled.

17.    In order to conceal this financial arrangement from Company-1, Chao, Sze, Bobba, and REDDY made affirmative misstatements or failed to disclose material information. For example, Sze reported that REDDY periodically traveled to the United States to meet with executives at Cmopany-1. During these meetings, REDDY allegedly provided the executives with information, such as PowerPoint presentations that Chao helped create, in order to give the appearance that SPSoft USA was a genuine third-party vendor with no improper financial dealings with Company-1 employees. This increased SPSoft USA's legitimacy as a vendor within Company-1.

18.    Bobba participated in this aspect of the conspiracy between 2011 and 2013, when he left Company-1. Chao, Sze, and REDDY continued participating in this scheme until 2015 when the illicit financial arrangement expanded.

### *SPSoft China: The Scheme Expands*

19.    In approximately 2015, Chao and Sze approached an individual that they had previously worked with ("Reference-1") to discuss starting a company known as SPSoft China. According to Sze, Reference-1 was hired to act as the head of SPSoft China, but Chao and Sze were the true owners.

20.    According to Sze, he and Chao intended to have SPSoft China perform outside vendor services to Company-1 in a similar vein to the services performed by Zillsoft and SPSoft USA/SPSoft India. Because SPSoft USA already had a relationship with Company-1, Chao and

Sze arranged with REDDY to have SPSoft China become a subcontractor to SPSoft USA. Based on information provided by Sze, I understand that Chao, Sze, and REDDY agreed that SPSoft USA would bill Company-1 for the work performed by engineers at both SPSoft India and SPSoft China. As part of the arrangement, REDDY would be paid a portion of the amount invoiced to Company-1 as a fee for helping conceal Chao and Sze's relationship with SPSoft China.

21. Financial records confirm that Company-1 paid SPSoft USA's invoices to a bank account controlled by REDDY. Money was then sent from SPSoft USA's bank account to entities in India as well as to Mooteec, a shell corporation controlled by Chao and Sze. Chao and Sze would pay the employees of SPSoft China and retain the remainder for themselves.

    a) Between approximately January 15, 2016, and January 24, 2020, the SPSoft USA account at Citibank ending in -2107, to which REDDY was the only authorized signatory, received approximately $30,280,476.00 of electronic payments from Company-1. As an example of one payment on or about October 4, 2019, the co-conspirators, in furtherance of the conspiracy, caused Company-1 to make an electronic payment to SPSoft USA's Citibank account in the amount of $810,248.28.

    b) Between approximately January 4, 2016, and November 11, 2019, SPSoft USA issued checks totaling $16,932,159.00 payable to Mooteec. The last check made payable to Mooteec endorsed by REDDY was dated November 6, 2019, and was for $36,720.00.

    c) Between approximately January 29, 2016, until March 26, 2020, the SPSoft USA account issued a total of $8,543,602.00 to payees with variations of the name "SP Soft" overseas via international wire transfers. Based upon wire detail, these wires appear to go to India. For example, on October 29, 2019, a transaction was initiated sending approximately $212,888.00 from the SPSoft USA account ending in -2017 to an account held at Axis Bank with a beneficiary of SP

Software Pvt Ltd. Based on wire documentation from Citibank, the wire was directed to Hyderabad, India. As REDDY was the only signatory on the SPSoft USA account, I believe that he initiated this foreign wire transfer in furtherance of the conspiracy.

22. In order to conceal their affiliation with SPSoft China from Company-1, Chao, Sze, and REDDY made affirmative misstatements or failed to disclose material information to. For example, by issuing invoices including services performed by both engineers at SPSoft India and SPSoft China, REDDY gave the appearance that the companies were affiliated and helped conceal SPSoft China's connection to Chao and Sze. Neither Chao nor Sze disclosed their control of or financial relationship with SPSoft China despite knowing that they had the duty to disclose, nor did they disclose that they were obtaining money from Company-1.

23. In 2020, following an internal investigation and referral to the FBI, representatives of Company-1, reportedly interviewed REDDY regarding his relationship with Chao and Sze. REDDY reportedly claimed that he did not meet Chao or Sze until approximately four to five years into the vendor relationship between Company-1 and SPSoft USA. He also stated that he never sent money directly to Chao or Sze. These claims are undercut by information from Sze and Bobba as well as financial records showing payments from SPSoft USA to entities controlled by Chao, Sze, and Bobba. At the time of the interview, Company-1 had an outstanding balance due to SPSoft USA for services rendered and Company-1's employees reported that REDDY was primary concerned with receiving payment.

## Conclusion

24. As outlined above, I believe there is probable cause to charge REDDY with one count of participating in a conspiracy to commit wire fraud and honest services fraud, in violation of 18 U.S.C. § 1349. REDDY paid kickbacks to Chao, Sze, and Bobba in exchange for profitable vendor contracts. He further agreed to help conceal Chao and Sze's control of SPSoft China by giving the appearance that SPSoft China was affiliated with SPSoft USA/India. His

conduct resulted in Company-1 awarding millions of dollars of vendor contracts to entities that he controlled. I respectfully request that the Court issue a criminal complaint and a warrant to arrest REDDY.

### Request for Sealing

25.    I respectfully request that the Court issue an order sealing, until further order of the Court, the criminal complaint and the arrest warrant, and all papers submitted in support of the complaints and warrants, including this affidavit.

26.    REDDY is a foreign national who may be aware of the overall investigation but is likely unaware that law enforcement has developed probable cause for his arrest. Premature disclosure of these documents may cause REDDY to change his patterns of behavior, including altering travel plans to the United States, or to destroy evidence. I believe that sealing is necessary to effectuate the orderly arrest of REDDY and to guard against flight and destruction of evidence.

I declare under penalty of perjury that the above is true and correct to the best of my knowledge.

/s/ Francesca Cheli
_____
FRANCESCA CHELI
Special Agent
Federal Bureau of Investigation

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this __7th__ day of October 2023.

_____
HON. LISA J. CISNEROS
United States Magistrate Judge