ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

SAILAJA M. PAIDIPATY (NYBN 5160007)
CHRIS KALTSAS (NYBN 5460902)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    sailaja.paidipaty@usdoj.gov
    chris.kaltsas2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 23-0489 BLF |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | Date: May 7, 2024<br>Time: 9:00 a.m. |
| SAGIREDDY PULLA REDDY, | |
| Defendant. | Hon. Beth L. Freeman |

## I. INTRODUCTION

Defendant Sagireddy Pulla Reddy is the third co-conspirator to be sentenced by the Court for a multi-year fraud perpetrated against Company-1. Unlike the other defendants, though, Reddy was not a Company-1 employee. He runs a software engineering company in Southern India, SP Soft Pvt. Ltd. ("SP Soft India"). To gain a foothold into the U.S. market from approximately 2011 through 2019, Reddy paid kickbacks to his co-conspirators who caused Company-1 to award him with lucrative vendor contracts. The fraud did not stop there, though. Reddy agreed to be the frontman for a China-based company, ultimately known as SP Soft China, owned by co-conspirators Kevin Chao and Richard Sze.

Company-1 awarded contracts to SP Soft China, believing it was a subsidiary of Reddy's Indian company. What Company-1 did not know was that its own employees, Chao and Sze, ran SP Soft China, and that the two men paid Reddy a percentage of that vendor contract for his assistance in their deceit.

Reddy's payment and receipt of kickbacks fueled the fraud for years and earned Reddy's company millions of dollars. Reddy's felony conviction underscores the seriousness of the conduct and its lengthy duration. As a result, he likely will be barred from entering the United States for 15 years, affecting his ability to conduct substantial business in this country. In recognition of the harm caused, Reddy pre-paid restitution in this case – $512,000, which reflects the amount that he was paid by Chao and Sze to facilitate the SP Soft China scheme. Weighing the sentencing factors, a further prison sentence is unnecessary. The significant collateral consequences further both specific and general deterrence; the three days that Reddy spent in pretrial detention following his arrest when he entered the United States is significant for an individual with no prior criminal history; and his prompt plea and restitution payment reflect a meaningful acceptance of responsibility. As recommended in the plea agreement, the government respectfully requests that this Court sentence Reddy to time served, three years of supervised release, a $100 special assessment, and $512,000 in restitution.

## II.    PROCEDURAL POSTURE

On October 7, 2023, the Honorable Lisa J. Cisneros, U.S. Magistrate Judge, signed a criminal Complaint charging Reddy with one count of conspiracy to commit wire fraud and honest services fraud, in violation of 18 U.S.C. § 1349. Presentencing Report ("PSR") ¶ 1. The same day, agents of the Federal Bureau of Investigation (FBI) arrested Reddy as he entered the country through San Francisco International Airport (SFO). On October 10, 2023, he was arraigned on the Complaint and released on bond. PSR ¶ 5.[1] On January 2, 2024, Reddy pled guilty to one count of conspiracy, in violation of 18 U.S.C. § 317, which was brought by Information the prior month. PSR ¶ 2. Following his plea, with the government's agreement, Reddy returned to India pending sentencing on May 7, 2024.

//

---

[1] The PSR notes that Reddy's initial appearance occurred on October 7, 2023. PSR ¶ 5. This appears to be a typo as the initial appearance took place on Tuesday, October 10, 2023.

USA SENT. MEM.                                     2
23-0489 BLF

## III. FACTUAL BACKGROUND

The government concurs with the recitation of the offense conduct in the PSR and encourages the Court to adopt it. Because of the complexity of the fraud and Reddy's role in it, the government briefly summaries the conduct below.

Over the course of eight years, Reddy both paid and accepted kickbacks as part of this broad fraud against Company-1.[2] He initially met co-conspirators Chao and Sze through another Company-1 employee, Suryanarayana Murthy Bobba.[3] *See* PSR ¶ 13; Dkt. 33, Plea Agreement ¶ 2. Bobba explained that he, Chao, and Sze operated Zillsoft, a U.S.-based software engineering outsourcer whose main client was Company-1. Bobba pitched Reddy on buying Zillsoft, therefore inheriting its vendor contract with Company-1. *Id.* As part of the deal, Bobba, Chao, and Sze would cause additional vendor contracts to be awarded to Reddy and in exchange Reddy would kick back 20 percent of the gross amount billed on those contracts. Reddy agreed to the deal and incorporated a California-based subsidiary of SP Soft India ("SP Soft USA"), which purchased Zillsoft and began working for Company-1. *Id.*

The arrangement added another layer of deceit in 2015 when Chao, Sze, and Reddy agreed to a further aspect of the scheme. Chao and Sze owned a China-based entity that could provide software development services to Company-1. PSR ¶ 15. To sidestep Company-1's conflict of interest rules, Reddy agreed to tell Company-1 that the China-based entity, known as SP Soft China, was a new foreign subsidiary of SP Soft India. *Id.* In exchange, Chao and Sze paid Reddy three percent of SP Soft China's invoices to Company-1. *Id.*

Company-1's internal investigation found that between 2012 and 2019, it paid SP Soft USA $36 million. PSR ¶ 17.

//

//

---

[2] The PSR identifies the victim by name, but the government understands that the victim prefers to be referenced as "Company-1" in public documents.

[3] Reddy's co-conspirators are charged in separate cases that have all been related under the Local Rules. *See United States v. Richard Sze*, No CR 23- 0118 BLF; *United States v. Suryanarayana Murthy Bobba*, No. CR 23-0119 BLF; and *United States v. Kevin Chao,* No. CR 23-0222 BLF.

## IV. U.S. SENTENCING GUIDELINES

The parties and the U.S. Probation Office ("Probation") agree that the applicable Guidelines are as follows:

|  | U.S.S.G. Section | Level/Points |
|---|---|---:|
| Base Offense Level | • 2X1.1; 2B1.1(a)(1) | +6 |
| Enhancements<br>• Loss between $250,000 and $550,000 | • 2B1.1(b)(1)(G) | +12 |
| • Sophisticated means / portion of offense occurred abroad | • 2B1.1(b)(10)(B-C) | +2 |
| Reductions<br>• Zero-point Offender | • 4C1.1 | -2 |
| Acceptance of Responsibility | • 3E1.1 | -3 |
| | Total Offense Level | 15 |
| | Advisory GL Range - CHC I | 18-24 months |

The parties agree that the applicable loss that can be proven by a preponderance of the evidence falls between $250,000 and $550,000, which is the amount paid to Reddy as kickbacks for his agreement to represent SP Soft China as a subsidiary of his company. Those kickbacks, totaling $512,000, were unrelated to any services provided by SP Soft USA to Company-1. As noted in the PSR, Reddy argues that aside from these specific kickbacks, the money paid by Company-1 on the vendor contracts with SP Soft USA were for services rendered at a competitive market price. PSR ¶ 17, n.1. These kickbacks, though, were unrelated to any services provided by Reddy's company and therefore constitute a clear loss to Company-1.

As the government noted during sentencings of co-conspirators, the government's position with respect to fraud "loss" here is limited to the particular requirements for determining loss under U.S.S.G § 2B1.1(b)(1). The government takes no position on potential overall "loss" faced by Company-1 as defined in other areas of the law or any claims for further redress that Company-1 may have.

## V. ARGUMENT

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520

F.3d 984, 991 (9th Cir. 2008).  The Court should begin by calculating the correct sentencing range under the Sentencing Guidelines.  *Id.*  The Guidelines are "the 'starting point and the initial benchmark,'" *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011) (quoting *United States v. Kimbrough*, 552 U.S. 85, 108 (2007)), and the Court should "remain cognizant of them throughout the sentencing process." *United States v. Gall*, 552 U.S. 38, 50 n.6 (2007).  After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a).  *Carty*, 520 F.3d at 991-93.  Here, considering the history and characteristics of the defendant, the need for a just punishment, and the need to afford adequate deterrence, a probationary sentence is sufficient to vindicate the statutory sentencing factors.  18 U.S.C. § 3553(a)(1), (a)(2)(B).

      Reddy stands in a unique position compared to co-conspirators previously sentenced by this Court.  Unlike Chao, Sze, and Bobba, Reddy owed no duty of loyalty to Company-1.  But as the one outsider in the conspiracy, he was fundamental to the scheme.  Without Reddy, the conduct may have ended in the early days when Chao, Sze, and Bobba found the Zillsoft fraud unwieldy to manage.  Instead, Reddy's agreement to buy Zillsoft and pay the kickbacks allowed the scheme to flourish and ultimately expand.

      That expansion found Reddy in a new role as one who both paid kickbacks, but also received them.  In doing so, Reddy made the $512,000, while also ensuring that Chao would continue causing Company-1 to award SP Soft USA millions in vendor contracts.  It was a mutually beneficial and financially lucrative deal.  At the heart of this fraud was greed and a willingness to make a profit and get ahead through lies.  Reddy is a sophisticated businessman running a seemingly successful company in India.  He could have entered the U.S. market honestly.  He *chose* not to.  He *chose* to participate in a complicated scheme where he paid kickbacks through shell companies.  He *chose* to lie to Company-1 executives regarding his relationship with SP Soft China.  This was not passive conduct where Reddy could sit back and collect his end of the deal.  On nearly a weekly basis, he had to create invoices to Company-1 reflecting the work performed by SP Soft USA and SP Soft China.  PSR ¶ 16.  Because he had no actual role at SP Soft China, he was provided with the hours worked by engineers there and combined them with his own engineers at SP Soft USA and SP Soft India.  *Id.*  Over and over he made

this false representation that he ran SP Soft operations in the United States, India, and China.

The conduct standing alone weighs in favor of a custodial sentence. The remaining sentencing factors, however, indicate that a noncustodial sentence is appropriate when considering Reddy's individual circumstances.

In October 2023, the FBI awaited Reddy as he landed in this District. He was immediately arrested and held in Santa Rita Jail for three days until he was released on bond. Pursuant to that bond, Reddy remained in this District for nearly three months (aside from one domestic trip approved by the Court), residing in an extended stay hotel, as the government and defense counsel worked through the charges and relevant evidence. The government recognizes the impact of that experience on an individual with no criminal history who was halfway around the world from his family and the life that he knew. Reddy promptly accepted responsibility, entering a guilty plea and setting aside the money for restitution within three months of his initial arrest. Since his return to India, Reddy has complied with all requirements imposed by the Department of Homeland Security to facilitate his return to the United States. This involved traveling domestically within India to the U.S. Embassy in New Delhi to receive parole travel documents allowing him to return to the United States for sentencing. The government considers these actions to speak to Reddy's genuine acceptance of responsibility.

Further, as a foreign national, the effect of a conviction alone is substantial. It is likely that Reddy will be barred from entering the United States for at least 15 years.[4] While not making it impossible to conduct business in the United States, the travel bar serves as a significant impediment to meaningfully building business in this country, which was one of the main reasons Reddy entered the conspiracy in the first place. The conviction, therefore, furthers both specific and general deterrence as it prevents Reddy from committing similar acts affecting individuals or companies in the United States and it sends a clear message that foreign nationals who seek to get ahead and profit from U.S. commerce through illicit means will face consequences.

Considered together, the few days that Reddy served in jail, the effect on his ability to travel to

---

[4] Under the Immigration and Naturalization Act, individuals convicted of certain criminal offenses may apply for a waiver of inadmissibility 15 years after the event making them inadmissible. *See* 8 U.S.C. § 1182(h).

and do business in the United States, and his acceptance of responsibility through his plea, return for sentencing, and restitution payment indicate that a sentence of time served, and three years of supervised release is a sufficient but not greater than necessary punishment for the underlying conduct.

## VI.  CONCLUSION

The government respectfully recommends that the Court impose a sentence of time served followed by of three years' supervised release, restitution in the amount of $512,000, and a mandatory $100 special assessment.  The government agrees with Probation that Reddy has the ability to pay a fine but defers to the Court on whether to impose a fine and in what amount.

DATED:  April 30, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

_____/s_____
SAILAJA M. PAIDIPATY
CHRIS KALTSAS
Assistant United States Attorneys